IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SUPERIOR SERVICES, INC.,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNIVERSAL WARRANTY CORP., and ALLY INSURANCE HOLDINGS, INC.,<br><br>        Defendants. | **8:15CV396** |
| ACI DEVELOPMENT CORPORATION,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNIVERSAL WARRANTY CORP., MIC GENERAL INSURANCE CORP., and ALLY INSURANCE HOLDINGS, INC.,<br><br>        Defendants. | **8:15CV398** |
| M.S.E. DISTRIBUTING, INC.,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNIVERSAL WARRANTY CORP., and ALLY INSURANCE HOLDINGS, INC.,<br><br>        Defendants. | **8:15CV400** |
| THOMAS HANLON, d/b/a Dealer Direct,<br><br>        Plaintiff,<br><br>   vs.<br><br>UNIVERSAL WARRANTY CORP., and | **8:15CV401** |

| ALLY INSURANCE HOLDINGS, INC., | |
|---|---|
| Defendants. | |

| AUTOMOTIVE DEVELOPMENT SERVICES, INC., Plaintiff, vs. UNIVERSAL WARRANTY CORP., and ALLY INSURANCE HOLDINGS, INC., Defendants. | 8:15CV402<br><br>**MEMORANDUM AND ORDER** |
|---|---|

This matter is before the court on the defendants' motions to dismiss, Filings No. 17 in *Superior Services, Inc. v. Universal Warranty Corp. and Ally Insurance Holdings, Inc.*, No. 15-v-396 ("*Superior Servs.*" case); *ACI Development Corp. v. Universal Warranty Corp., Mic General Insurance Corp., and Ally Insurance Holdings, Inc.*, No. 15-cv-398 (*"ACI"*); *M.S.E. Distributing Inc. v. Universal Warranty Corp. and Ally Insurance Holdings, Inc.*, No. 15-cv-400 ("*MSE*"); *Hanlon v. Universal Warranty Corp. and Ally Insurance Holdings, Inc.*, No. 15-cv-401 ("*Hanlon*"); and *Automotive Development Servs., Inc. v. Universal Warranty Corp. and Ally Insurance Holdings, Inc.*, No. 15-v-402 ("*ADS*"), and on the defendants' motions to strike the plaintiffs'

2

evidence in opposition to the motions to dismiss, Filings No. 31 in each above-captioned case.[1]

These are actions for breach of contract, fraudulent concealment, negligent misrepresentation, tortious interference with a contract, unjust enrichment, and breach of the covenant of good faith and fair dealing in connection with representation agreements for service contracts for motor vehicles. This court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. The actions were removed from state court and have been consolidated for pretrial management and discovery. *See* Filing No. 16.

I. BACKGROUND

In their detailed sixteen-page complaints, the plaintiffs allege they are independent sales agents who offer motor vehicle service contracts ("VSCs"), and GAP contracts to new and used motor vehicle dealers for resale to the dealers' customers.[2] VSCs provide protection against mechanical breakdown and pay the cost of covered repairs, and GAP contracts provide protection in the event a vehicle is totaled or stolen, and the actual cash value of the vehicle is less than the outstanding balance on the lease or financing agreement. *See* Filing No. 1-1, Notice of Removal, Ex. 1, Complaint at 3. Defendant Universal Warranty Corp., a wholly owned subsidiary of defendant Ally

---

[1] The court has not relied on any of the evidence submitted by the plaintiffs in opposition to the motions to dismiss, accordingly the motions to strike the evidence will be denied as moot.

[2] The court will generally cite to the complaint in the lead action, the Superior Servs. Case, No. 8:15-cv-396. The complaints filed in the other cases contain allegations identical in substance for the most part.

Insurance Holdings, Inc. (hereinafter, collectively, "defendant" or "UWC") issues, administers and markets such service contracts.[3]  *Id.*

The plaintiffs allege that during the relevant period, they offered VSCs and GAP contracts, branded "VehicleOne" contracts, to motor vehicle dealers on behalf of defendant UWC.  *Id.* at 3.  The plaintiffs sold these VSCs pursuant to agreements with UWC known as the "VehicleOne Program Representative Agreement" and the "VehicleOne Primary GAP Representative Agreement" (hereinafter, collectively, "Rep Agreements").  *Id.*, Ex. A.[4]  Under the Rep Agreements, the plaintiffs were required—at their own expense—to solicit motor vehicle dealers to carry VehicleOne VSCs and to train dealers how to sell them to consumers.  *Id.*

The plaintiffs allege they were independent agents, not employees.  *Id.* at 4.  They state they had relationships with most of the dealers before they began selling the defendants' contracts.  *Id.*  They allege that their primary value to UWC was their ability to convince their existing dealer networks to carry UWC products in place of whatever products the dealer carried previously.  *Id.*

---

[3] The defendant entities are identified in the pleadings as follows:  Defendant UWC is a Michigan corporation that transacts business in Nebraska, serving as the third-party administrator for vehicle service and warranty contracts.  Defendant Ally Insurance Holdings, Inc. ("AIHI") is a Delaware corporation that transacts business in Nebraska, marketing vehicle service contracts ("VSCs") and other financial services products to motor vehicle dealers.  Defendant AIHI is a wholly-owned subsidiary of Ally Financial Inc.  Ally Financial Inc. was formerly named GMAC, Inc. ("GMAC").  General Motors Corporation started GMAC and later sold a majority share of the company.  See Filing No. 1-1, Complaint at 1-2; *see also* Filing No. 13, Corporate Disclosure Statement.  Defendant MIC General Insurance Corp. was an Ally affiliate issuing contracts in Florida, and is a named defendant only in the ACI case, serving the same role as UWC.  See *ACI*, No. 15-cv-398, Filing No. 1-1, Complaint.

[4] The complaints in each case identify and refer to both agreements, and allege that they are "largely duplicative," but only one of those documents is attached to each plaintiff's complaint.  *See, e.g.,* Filing No. 1-1, Complaint at 9 n.2.  Defendant UWC does not dispute the contention that the terms of the agreements are duplicative and has provided a complete set of contracts for all parties.  See Filing No. 19, Index of Evid., Declaration of Donald Buckner, Exs. A-J.

Plaintiffs were compensated for their efforts on a pure commission basis in the form of a representative fee for each contract sold by the dealer to a consumer. *Id.* They allege they were paid only if they successfully solicited the dealer to sell VehicleOne VSCs or GAP contracts and the dealer successfully sold and continued to sell these contracts. *Id.* The plaintiffs further allege defendants did not reimburse them for their expenses or compensate them for the business risk they took. *Id.* Paragraph 7(b) of the VehicleOne Program Representative Agreement and ¶ 8(b) of the VehicleOne Primary Gap Agreement provide that the representative fee will be paid only in respect to those service contracts or debt waiver forms for which UWC has received the Dealer Cost, provided that the representative "is currently servicing such Dealer account on behalf of [the defendant]." *See* [Filing No. 19](), Index of Evid., Declaration of Donald Buckner, Ex. A, VehicleOne Program Representative Agreement at 2, VehicleOne Primary Gap Representative Agreement at 2.

The plaintiffs allege that they had a reasonable expectation of payment both in the near and long term. *Id.* at 5. They also allege that defendants assured them that they would continue to pay the plaintiffs commissions for VSCs and GAP sold through the independent agents' customers in the event that it terminated the VehicleOne Program Agreement. *Id.* They identify specific statements to that effect by UWC's Senior Vice President of Sales in April 2013. *Id.* at 7.

They also allege that at the same time the plaintiffs were soliciting dealerships to carry UWC's products, UWC's corporate parent, Ally Insurance Holdings, Inc. ("Ally") was utilizing a direct sales force to solicit dealerships to carry similar products known as the GM Protection Plan. *Id.* at 5. Thereafter, GM decided to offer, and in fact began

5

offering, its own VSCs to GM dealers, bringing them into direct competition with Ally.  *Id.* at 6.  GM then decided, effective November 2016, not to renew Ally's right to use GM's name and trademark in marketing VSCs.  *Id.*

Plaintiffs allege Ally then developed a plan to gain control of the business and business relationships then being overseen by defendant UWC's independent agents.  *Id.*  Plaintiffs contend that Ally asked UWC to approach agents that were responsible for the highest volume of UWC business and convince them to execute a "Core Representative Addendum to VehicleOne Program Representative Agreement" ("Core Addendum").  *Id.*; *see e.g., id.*, Ex. B, Core Addendum.  The Core Addendum is an amendment and supplement to the Rep Agreements.  *Id.* at 1.  The plaintiffs, other than ACI, each executed the Core Addendum on various dates in March and April 2013.  *Id.* at 3; *see also MSE*, No. 8:15-cv-400, [Filing No. 1-1](), Complaint, Ex. C, Core Addendum at 3; *Hanlon*, No. 15-cv-401, [Filing No. 1-1](), Complaint, Ex. C, Core Addendum at 3; *ADS*, No. 8:15-cv-00402, [Filing No. 1-1](), Complaint, Ex. C at 3.  Plaintiff ACI did not sign the Core Addendum.  *ACI*, No. 8:15-cv-398, [Filing No. 1-1](), Complaint at 7.

The Core Addendum imposed restrictions on the independence of independent agents, including prohibiting the "Core" agents from "offer[ing] any [vehicle service contract] or GAP programs other than VehicleOne]" without the consent of the Ally account executives on accounts where Ally or UWC provided the dealers leads or assigned agents to specific contracts.  *Id.* at 7.  The plaintiffs also assert that UWC established minimum annual revenue thresholds that were so aggressive that they only could be met if agents marketed UWC products exclusively.  *Id.*

6

The version of the Core Addendum attached to the *Hanlon* and *MSE* complaints states: "[i]n the event of termination under this section 3(b),[5] Representative shall not be entitled to any Representative Fees on VehicleOne sales made by Assigned Dealers after the effective date of termination of this Core Addendum." *See MSE*, No. 8:15-cv-400, Filing No. 1-1, Complaint, Ex. C, Core Addendum (dated April 4, 2013) at 3; *Hanlon*, No. 15-cv-401, Filing No. 1-1, Complaint, Ex. C, Core Addendum (undated) at 3. That language is not included in the Core Addendum attached to the *ADS* and *Superior* complaints. ADS, No. 15-cv-402, Filing No. 1-1, Complaint, Ex. C, Core Addendum (dated April 23, 2013) at 3; *Superior*, No. 15-cv-396, Filing No. 1-1, Complaint, Ex. B., Core Addendum (dated April 22, 2016) at 3.

Further, the plaintiffs allege in their complaints that defendants induced the agents to sign the Core Addendum by promising an annual bonus, a profit-sharing arrangement, greater access to Ally's resources and financial structures, and a strong foundation for a long-term relationship with the Ally family of companies. *Id.* at 8. They allege UWC urged the independent agents to work closely with Ally's direct sales team and to introduce direct sales team members to their customer contacts, so that when

---

[5] Section 3(b) states:

This Core Addendum shall terminate immediately and without notice in the event of: i) termination of either of the Agreements, ii) malfeasance on the part of the Representative, iii) a material change in control of any party, iv) the insolvency of any party, v) the institution of bankruptcy or similar proceedings by or against any party under the laws of any jurisdiction, or vi) the making by any party of an assignment for the benefit of creditors.

*Superior*, No. 15-cv-396, Filing No. 1-1, Complaint, Ex. B, Core Addendum at 3.

7

Ally terminated the independent agents, Ally would be in a better position to retain business. *Id.*

The plaintiffs allege that on or about April 29, 2015, defendant UWC notified the plaintiffs it was terminating the Rep Agreement and the Core Addendum, effective July 1, 2015. *Id.* at 9; *see id.*, Ex. C. They allege that by that time, the plaintiffs' marketing efforts had created a vast network of dealers tethered to UWC and its products and states that to this day dealers continue to sell UWC products and generate profits for UWC. *Id.* Plaintiffs allege that in spite of express assurances that it would do so, UWC refuses to pay the plaintiffs commissions on the sales. *Id.* at 10.

In its motions to dismiss, the defendants argue plaintiffs' claim for breach of contract fails to state a plausible claim because the claim is for post-termination commissions, and the contract expressly states that no such commissions are payable. Defendants also argue that the plaintiffs' complaint fails to state a claim for fraud with the requisite particularity required under the Fed. R. Civ. P. 9, and that the plaintiffs' claim for fraudulent concealment should be dismissed because plaintiffs cannot establish the necessary elements of their claim. They argue that the plaintiffs' negligent misrepresentation claim should be dismissed for the same reasons. They further argue that plaintiffs' claim for tortious interference is subject to dismissal because the defendants' acts were permitted by the contract and were therefore not unjustified or wrongful. Also, they argue it is appropriate to dismiss the plaintiffs' unjust enrichment claim because the plaintiffs cannot simultaneously pursue breach of contract and unjust enrichment on the facts alleged. Last, defendants argue that the plaintiffs' claim for

8

breach of the duty of good faith and fair dealing should be dismissed because the acts of the defendants were permitted by the contract.

II. LAW

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Courts follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. *Id.* First, a court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

678. The court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 556; *see also Doe v. Board of Regents of Univ. of Neb.*, 788 N.W.2d 264, 278 (Neb. 2010) (holding that "to prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face").

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal] Rule [of Civil Procedure] 56." Fed. R. Civ. P. 12(d). "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). A district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion. *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Where the claims relate to a written contract that is part of the record in the case, the court considers the language of the contract when reviewing the sufficiency of the complaint. *Gorog*, 760 F.3d at 792. "[T]he contracts upon which [a] claim rests . . . are evidently embraced by the pleadings." *Mattes v. ABC Plastics,*

10

*Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003); *see also Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

Under Nebraska law, a party seeking recovery for breach of contract must prove: the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the opposing party's duty. *See Henriksen v. Jim's Body Shop*, 643 N.W.2d 652, 658 (Neb. 2002). The party must further prove its damages were proximately caused by the breach. *Union Ins. Co. v. Land and Sky, Inc.*, 568 N.W.2d 908, 911 (Neb. 1997). A court examining, as a matter of law, whether a contract is ambiguous must look to the whole contract, not just a portion. *Husen v. Husen*, 487 N.W.2d 269, 272 (Neb. 1992) ("A contract must be construed as a whole and, if possible, effect must be given to every part thereof."). At the pleading stage, a plaintiff who fails to point to an identifiable contractual promise that the defendants did not honor has not alleged a contract claim that plausibly entitles him to relief. *Doe*, 788 N.W.2d at 295; cf. *Doe v. Bd. of Regents of Univ. of Nebraska*, 809 N.W.2d 263, 270 (Neb. 2012) (allowing action identifying specific contract and obligation allegedly breached to proceed).

Whether a contract is ambiguous is a question of law. *David Fiala, Ltd. v. Harrison*, 860 N.W.2d 391, 397 (Neb. 2015). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* When a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder. *Id.* If a contract is

ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract. *Id.* Although the language of a document may be clear and unambiguous, a latent ambiguity exists when collateral facts make the meaning of the contract uncertain. *Plambeck v. Union Pacific R.R. Co.,* 509 NW2d 17, 20 (Neb. 1993); *see Union Nat. Bank of Little Rock v. Federal Nat. Mortg. Ass'n*, 860 F.2d 847 (8th Cir. 1988) (parol evidence rule will not bar evidence of subsequent modifications to an agreement nor when the agreement is incomplete or ambiguous).

Under the Federal Rules, a party alleging fraud must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). The rule is interpreted in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). Essentially, the complaint must plead the who, what, where, when, and how of the alleged fraud. *Id.* Because this higher degree of notice is intended to enable the defendant to respond specifically and quickly to potentially damaging allegations, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Id.* Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement, except when the facts constituting the fraud are peculiarly within the opposing party's knowledge. *Id.* at 783-84 (stating that the rule is satisfied if the allegations are accompanied by a statement of facts on which the belief is founded).

However, the scienter element of fraud need only be alleged generally. Fed. R. Civ. P. 9(b).

In order to prove fraud or misrepresentation under Nebraska law, plaintiffs must prove: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff did so rely; and (6) that he or she suffered damage as a result. *Freeman v. Hoffman La Roche, Inc.*, 618 N.W.2d 827, 844-45 (Neb. 2000). False representations must be the proximate cause of the damage before a party may recover. *Huffman v. Poore*, 569 N.W.2d 549, 560 (Neb. Ct. App. 1997).

To state a claim for negligent misrepresentation, a plaintiff must plead the same elements as for a fraud claim, with the exception of the defendant's mental state. *Lucky 7, LLC v. THT Realty LLC*, 775 N.W.2d 671, 675 (Neb. 2009). Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information. *Gibb v. Citicorp Mortgage, Inc.*, 518 N.W.2d 910, 920 (1994) (adopting Restatement (Second) Torts § 552 to specifically enumerate the elements of a negligent misrepresentation claim). One of the elements of a cause of action for negligent misrepresentation is justifiable reliance on the part of the plaintiff. *Washington Mut. Bank, FA v. Advanced Clearing, Inc.*, 679 N.W.2d 207, 210 (Neb. 2004). Whether a party's reliance upon a misrepresentation was reasonable is a question of fact. *Nebraska Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472, 496 (Neb. 2001). Negligent misrepresentation is a subspecies of fraud, and a party must state

13

with particularity the circumstances constituting fraud.  *Farr v. Designer Phosphate & Premix Int'l., Inc.*, 570 N.W.2d 320, 326 (Neb. 1997); *see* Fed. R. Civ. P. 9(b).

To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.  *Professional Mgmt. Midwest, Inc. v. Lund Co.*, 826 N.W.2d 225, 235 (Neb. 2012).

The elements of unjust enrichment are that the defendant received money; the defendant retained possession of the money; and in justice and fairness, the defendant ought to pay the money to the plaintiff.  *See Kanne v. Visa U.S.A.*, 723 N.W.2d 293, 302 (Neb. 2006).  A party may plead unjust enrichment as an alternative theory to its express contract theory.  *Professional Recruiters, Inc. v. Oliver*, 456 N.W.2d 103, 107 (Neb. 1990).

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract.  *Coffey v. Planet Grp., Inc.*, 845 N.W.2d 255, 263 (Neb. 2014).  The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties.  *Id.* Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party.  *Id.*  The question of

a party's good faith in the performance of a contract is a question of fact. *RSUI Indem. Co. v. Bacon*, 810 N.W.2d 666, 674 (Neb. 2011).

### III. DISCUSSION

The court finds the defendants' motions to dismiss should be denied. The plaintiffs' complaints, together with the documents attached to and referred to in the complaints, adequately allege that the parties had a contractual relationship. The plaintiffs assert the defendants improperly terminated the agreements and failed to pay sums allegedly due under the agreements. They have adequately alleged a promise, its breach, damage, and compliance with conditions precedent and have outlined facts, taken as true, to suggest that discovery will reveal evidence of the elements of the breach of contract claims.

The court rejects the defendants' argument, at this stage of the proceedings, that the contracts unambiguously establish that defendants have no obligation to pay post-termination commissions. Read in their entirety and as amended by the core addenda, the contractual documents are at least ambiguous, if not inconsistent. The agreements can be reasonably interpreted to impose a post-termination commission obligation. The provision that UWC removed from its later Core Addendum contracts state fairly straightforwardly that UWC will not pay commissions for "sales made by Assigned Dealers" post-termination, which implies that commissions for sales made by dealers who were not "Assigned Dealers" would continue. Further, the reasons for termination differ between the Rep Agreements and the Core Addenda. The construction of the contract should await further development of the record.

The court also finds the plaintiffs have alleged fraud and negligent misrepresentation with sufficient particularity to withstand a motion to dismiss. They have set out the who, what and where of the alleged misstatements and have plausibly alleged that they relied on the statements. Whether such reliance is reasonable is a question of fact. The plaintiffs' complaints allege facts from which the court can infer that the statements were made knowingly or at least with reckless disregard as to their truth or falsity. Accordingly, plaintiffs have adequately stated claims for fraudulent or negligent misrepresentation.

Although a plaintiff may not be allowed to recover for both breach of an express contract and unjust enrichment, he is allowed to assert both at the pleading stage. The allegations of the complaints adequately allege unjust enrichment. Also, the allegations of the complaint, taken as true, support a breach of the implied covenant of good faith and fair dealing. The plaintiffs have alleged that they have been deprived of their reasonable expectations. Accordingly,

IT IS ORDERED that:

1. The defendants' motions to dismiss ([Filing No. 17](Filing No. 17) in Case No. 15-v-396; [Filing No. 17](Filing No. 17) in Case No. 15-cv-398; [Filing No. 17](Filing No. 17) in Case No. 15-cv-400; [Filing No. 17](Filing No. 17) in Case No. 15-cv-401; and [Filing No. 17](Filing No. 17) in Case No. 15-v-402) are denied.

2. The defendants' motions to strike ([Filing No. 31](Filing No. 31) in Case No. 15-v-396; [Filing No. 31](Filing No. 31) in Case No. 15-cv-398; [Filing No. 31](Filing No. 31) in Case No. 15-cv-400; [Filing No. 31](Filing No. 31) in Case No. 15-cv-401; and [Filing No. 31](Filing No. 31) in Case No. 15-v-402) are denied as moot.

3. The defendants shall file a responsive pleading within 14 days of the date of this order.

DATED this 20th day of May, 2016

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge